UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

SUSAN F. HARPER,

        Plaintiff,

    v.

HOLLAND & KNIGHT LLP, a foreign limited liability partnership,

        Defendant.

Case No. 3:16-cv-00111-YY

FINDINGS AND RECOMMENDATION

YOU, Magistrate Judge:

    Before the court is defendant Holland & Knight LLP's ("Holland & Knight") motion for partial summary judgment (ECF #27) on plaintiff Susan F. Harper's ("Harper") 3rd and 4th claims. Harper brought claims for age discrimination under 29 USC § 623 (1st claim) and ORS 659A.030 (2nd claim), common-law wrongful termination (3rd claim), and age-based hostile work environment under the Civil Rights Act of 1964, 42 USC § 2000e, *et seq.*, and the Age Discrimination in Employment Act of 1967, 29 USC §§ 621–634 (4th claim). Compl., ECF #1.

    At oral argument, Harper conceded her 3rd claim should be dismissed. With respect to her 4th claim, Harper did not experience age-based discrimination that was severe and pervasive as a matter of law. Accordingly, Holland and Knight's motion for partial summary judgment (ECF #27) should be GRANTED in its entirety.

## **BACKGROUND**

    Harper worked as a receptionist and senior receptionist in Holland & Knight's Portland office for 14 years until she was terminated on September 5, 2014, at age 54. Compl. ¶¶ 13–15.

1 – FINDINGS AND RECOMMENDATION

She received positive annual reviews and salary increases throughout her employment and was generally well regarded. *Id.* ¶¶ 17, 20; Didi Young Depo. at 3–5, ECF #31-4; Louis Santiago Depo. at 3–5, ECF #31-5. In early 2014, Holland & Knight brought in six new attorneys with active litigation practices, but no new support staff. Def.'s Mot. for Partial Sum. J. at 4, ECF #27 ("Def.'s Mot."); Pl.'s Resp. to Def.'s Mot. at 8, ECF #31 ("Pl.'s Resp."). Along with the adoption of new technology, this increased workload changed Harper's duties as a receptionist. Def.'s Mot. at 3–5; Pl's Resp. at 5. Holland & Knight claims Harper was unable to fulfill her new duties and that after informal counseling and training measures failed, she was terminated for poor performance. Def.'s Mot. at 5–6.

Harper alleges that—around the same time, in May 2014—her long-time co-worker, Sandra K. Egge ("Egge"), began treating her differently by micromanaging her work, telling her that she was working too slowly, and criticizing her for bumping into a table and adjusting the heights of office chairs. Compl. ¶ 21; Harper Depo. at 19, 20, 22, ECF #31-1. Egge was a 70-year-old administrative specialist. Def.'s Mot. at 6; Decl. of Erik Scales in Supp. of Def.'s Mot. ¶ 2 ("Scales Decl."), ECF #28. "On a few occasions, [when Harper would make a mistake,] Ms. Egge stated that [Harper] was having 'junior moments,' because [she] was not yet 60 years old, explaining that when [she] was 60, these would be 'senior moments.'" Compl. ¶ 22 ("junior-moment comments"); Harper Depo. at 22, ECF #31-1. However, Harper admitted that she could not recall how many times these junior-moment comments had been made, in what timeframe the comments had been made, or what Egge's intentions were in making them. Harper Depo. at 22–23. Egge claims that these comments were benign, that Harper laughed at them without hesitation, and that they became a joke between the two of them. Sandra Egge Decl. in Supp. of Def.'s Mot. at 7, ECF #33-2.

In August 2014, about a month before her termination, Harper claims her supervisor, Erik Scales ("Scales"), began to treat her more harshly and to ostracize her. Compl. ¶ 24. Harper claims that Scales told her he had spies watching her, began admonishing her for not completing tasks that were not assigned to her, was rude and condescending to her, and excluded her from staff meetings. Harper Depo. at 8, 17, 21, 26. Scales terminated Harper in September 2014. *See* Def.'s Mot. at 2; Scales Decl. ¶¶ 1–2. Shortly before she was terminated, Harper complained to Egge that she did not receive her required rest breaks and that Scales was dismissive when she complained to him about people walking behind her reception desk. Harper Depo.at 5–6, 18–19, 24. Harper alleges that when she was terminated, Scales told her she was "too old," "too slow," that she had "been around too long," and that even the new intern did a better job than her. Compl. ¶ 30; Harper Depo. at 3, 15–16.

## **LEGAL STANDARDS**

Under FRCP 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party moving for summary judgment bears the initial responsibility of informing the court of the basis for the motion and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party does so, the nonmoving party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citing FRCP 56(e)).

In determining what facts are material, the court considers the underlying substantive law regarding the claims. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Otherwise stated, only disputes over facts that might affect the outcome of the suit preclude the entry of summary judgment. *Id.* A dispute about a material fact is genuine if there is sufficient evidence for a

reasonable jury to return a verdict for the non-moving party. *Id.* at 248–49. A "scintilla of evidence" or "evidence that is merely colorable or not significantly probative" is insufficient to create a genuine issue of material fact. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

The court "does not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial." *Balint v. Carson City, Nev.*, 180 F.3d 1047, 1054 (9th Cir. 1999). "Reasonable doubts as to the existence of material factual issue are resolved against the moving parties and inferences are drawn in the light most favorable to the non-moving party." *Addisu*, 198 F.3d at 1134.

## **FINDINGS**

A reasonable trier of fact could not conclude that Harper & Knight's conduct was sufficiently severe or pervasive to create an age-based hostile work environment.

**I.      Legal Framework**

To prove an age-based hostile-work-environment claim, Harper must show that she was subjected to verbal or physical conduct based on age, that the conduct was unwelcome, and that the conduct was sufficiently severe or pervasive as to alter the conditions of her employment and create an age-based hostile work environment. *E.g.*, *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21–23(1993); *Fuller v. City of Oakland*, 47 F.3d 1522, 1527–28 (9th Cir. 1995); *Ellison v. Brady,* 924 F.2d 872, 878–79 (9th Cir. 1991). "[She] must establish that the conduct at issue was both objectively and subjectively offensive: [she] must show that a reasonable person would find the work environment to be 'hostile or abusive,' and that [she] in fact did perceive it to be so." *Dawson v. Entek Int'l*, 630 F.3d 928, 937–38 (9th Cir. 2011) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)).

In determining whether conduct is sufficiently hostile to constitute a hostile work environment, courts will look at "all the circumstances," including the "frequency of the discriminatory conduct; its severity; whether it's physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. The level of "severity or seriousness [required] 'varies inversely with the pervasiveness or frequency of the conduct.'" *Nichols*, 256 F.3d at 872 (citing *Ellison,* 924 F.2d at 878). However, "[s]imple teasing, offhand comments, and isolated incidents (unless extremely serious)[] will not amount to discriminatory changes in the terms and conditions of employment." *Faragher*, 524 U.S. at 788 (internal citation and quotation marks omitted).

## II.     Discussion

The only age-based conduct Harper alleges she suffered were Egge's junior-moment comments and the statement Scales made when he terminated her employment.

It is unclear whether the junior-moment comments were unwelcome. Harper did not complain about them to Egge or Scales, she did not report them to Holland & Knight's Fair Employment Practices Committee, and she could not recall reporting the comments to anyone in management. Depo. of Susan Harper at 16–19, ECF #29-1. Significantly, when asked if Egge had made discriminatory comments, Harper stated "[n]ot that I am aware of. I don't know." *Id.* at 10. Harper asserts the junior-moment comments are significant because Egge was her de facto supervisor and a high-level official at Holland & Knight. Pl.'s Resp. at 14; Depo. of Aaron Tuttle at 3, ECF #31-3. However, Egge was an administrative specialist—she was neither an executive nor a high-level official—and Scales was Harper's supervisor. Scales Decl. ¶ 2; Reply in Supp. of Def.'s Mot. at 5, ("Def.'s Reply"), ECF #32. Egge was not "in charge" when Scales

was absent from the Portland office and she did not make employment decisions such as hiring or firing. Scales Decl. ¶ 2; Def.'s Reply at 5. Although Egge may have delegated work to Harper, and Harper may have perceived her as a supervisor, Egge was not empowered to take any tangible employment actions against Harper. Scales Decl. ¶ 2. Legally, therefore, Egge was not Harper's supervisor. *See Vance v. Ball State Univ.*, 133 S.Ct. 2434, 2443 (2013) (supervisors are individuals with authority to make tangible employment decisions).

In any event, these junior-moment comments were, at worst, "[s]imple teasing, offhand comments, and isolated incidents" not amounting to actionable misconduct. *Faragher*, 524 U.S. at 788. They could not objectively be perceived by a reasonable 54-year old to be "hostile," particularly when the speaker was 70-years old. Furthermore, Harper does not allege that these comments caused her such distress that they interfered with her work performance.

A reasonable 54-year old could find Scales' statements were offensive. Harper claims Scales told her she was "too old" and "too slow," that she had "been around too long," and that a younger summer intern did a better job than her. Compl. ¶ 30; Harper Depo. at 3, 15–16. However, these comments, allegedly made during the meeting when Harper was terminated, constitute the sole instance of objectively hostile age-based conduct. And being the sole instance, they are not pervasive. Further, they amount to a "mere offensive utterance" and cannot be construed as physically threatening or humiliating. *See Harris*, 510 U.S. at 23. Because they were made at the time she was terminated, they could not have interfered with her work performance or otherwise altered the conditions of her employment.

Harper cites *Landucci v. State Farm Ins. Co.*, 5:14-CV-00789-LHK, 2014 WL 3705117 (N.D. Cal. July 23, 2014), and *Hong v. Right Mgt. Consultants, Inc.*, C 04-4011 PJH, 2006 WL 335291 (N.D. Cal. Feb. 14, 2006), for the proposition that together, Egge and Scales' other

conduct amounts to a hostile work environment. However, the repeated and ongoing hostile conduct that the plaintiffs in those cases endured over periods of years demonstrates why the few troublesome incidents that Harper endured in the weeks leading up to her termination are neither sufficiently severe nor pervasive to constitute a hostile work environment.

In *Landucci*, the plaintiff survived a motion to dismiss on her gender-based hostile-work-environment claim because her supervisor engaged in a repeated pattern of micromanagement and criticism over two periods spanning at least one year each. 2014 WL 3705117, at *1–*2, *5–*6. There, the supervisor looked into the plaintiff's company vehicle and asked her why there were shopping bags in the back seat, checked to see where she stored her computer at night, and confiscated it. *Id.* at *1. He instructed her on tasks she knew how to perform such as how to write auto estimates, how to take photographs, and how to talk to customers. *Id.* On five or six occasions he asked her how old she was, when she was going to retire, and if she had trouble bending down on her knees. *Id.* He would find fault in her commute times, customer service, hours worked, and would sometimes call her several times a day to berate her, which made her late to appointments. *Id.* He critiqued her for a minute discrepancy in her time card, use of the IT department, and her attire. *Id.* at *1–*2. He denied her requests for overtime despite regularly granting her male co-workers permission to work overtime. *Id.* at *2. On four occasions he refused to allow her to leave work early when she was ill. *Id.* Importantly, the plaintiff reported this unfair and demeaning treatment to multiple human resources representatives and even spoke to the section manager; however, no actions were taken to change the supervisor's behavior. *Id.* at *2.

The plaintiff in *Hong* similarly survived summary judgement on her gender-based hostile-work-environment claim because she showed that on multiple occasions for more than

two years her supervisor raised his hand to her signaling for her to "shut up," stepped in front of her to block others' view of her, berated her while standing over and pointing his finger at her, humiliated her in front of other employees, refused to acknowledge that use of the term "fucking matriarch" constituted sexual harassment, excluded her from training sessions, re-assigned accounts that she brought in to her male co-workers, and praised her male co-workers while singling her out during sales meetings and inaccurately accusing her of poor performance. 2006 WL 335291, at *3–*4.

The relentless and demeaning conduct endured in these cases contrasts sharply with the isolated, innocuous, and short-lived conduct that Harper endured. Considering the totality of the circumstances—even construing Harper's allegations broadly and in her favor and accepting that her subjective sentiment towards the alleged comments and misconduct was genuinely felt—the necessary pervasiveness and severity is lacking. *Justice v. Rockwell Collins, Inc.*, 117 F. Supp. 3d 1119, 1139 (D. Or. 2015) (dismissing sexually hostile work environment claim for lack of pervasiveness and severity); *Aoyagi v. Straub Clinic & Hosp., Inc.*, 140 F. Supp. 3d 1043, 1059 (D. Haw. 2015) (finding that an incident where the supervisor told a plaintiff that younger employees were "more tech savvy and in tune with what's going on" was clearly insufficient to demonstrate discriminatory animus based on plaintiff's age).

## RECOMMENDATION

The court should GRANT Holland & Knight's motion for partial summary judgment (ECF #27) because Harper conceded her 3rd claim should be dismissed at oral argument and her 4th claim—that she suffered age-based discrimination—fails as a matter of law.

///

///

**SCHEDULING ORDER**

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due Monday, August 21, 2017. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

**NOTICE**

This Findings and Recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any Notice of Appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of a judgment.

DATED August 7, 2017.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge